IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
v.                                      )        Criminal No. 1:15-CR-290
                                        )
                                        )        The Honorable Liam O∅Grady
NOE MONTES-BOBADILLA, et al.,           )
                                        )
        Defendants.                     )
_____)

### DEFENDANTS' NOTICE AND MOTION, WITH MEMORANDUM, TO SUPPRESS ANY POTENTIAL IN-COURT IDENTIFICATIONS OF CERTAIN COOPERATING SOURCES ("CS"s)

COMES NOW the defendant, Arnulfo Fagot-Maximo (hereinafter ōMaximoö), by counsel, and moves this Court, on November 9, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, to preclude the below Government witnesses from testifying as to the identification of Mr. Maximo, and in support thereof states the following.

With regard to eyewitness identifications and their admissibility, Constitutional Due Process establishes that the standard is one of fairness. *Manson v. Brathwaite*, 432 U.S. 98 (1977). Along those lines, The Supreme Court has established a two-pronged approach to determine whether an eyewitness identification must be suppressed because it has been tainted by police procedures or conduct. *Perry v. New Hampshire*, 565 U.S. 228 (2012). In the first prong, a trial court needs to determine whether the identification procedure was ōboth suggestive and unnecessary.ö *Fowler v. Joyner*, 753 F.3d 446, 453 (2014)(citing *Perry, supra*). In the second prong, the court needs to determine ōwhether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. *Id*. (citing

*Neil v. Biggers*, 409 U.S. 188 (1972). *Biggers* set out five factors for consideration of whether the identification was reliable under the second prong. The five factors include: 1) the witness's opportunity to view the perpetrator at the time of the crime; 2) the witness' degree of attention at the time of the offense; 3) the accuracy of the witness' prior description of the perpetrator; 4) the witness' level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and 5) the length of time between the crime and the confrontation. *See Biggers* 409 at 199-200. These factors are weighed against "the corrupting effect of the suggestive identification itself." *Fowler*, 753 F.3d at 453, *Manson*, 432 U.S. at 114.

Courts have also recognized the importance of various types of information in determining whether a photo array may have been impermissibly suggestive. Factors that Courts have considered include whether the person in the photo was depicted accurately, the number of photos in the array, and unique differences that draw a witness's eye to the photo amongst other factors. *See United States v. Wooten*, 2004 U.S. Dist. Lexis 44976, 14-15 (D. Md. 2004) (Court held that where there were a low number of photographs shown and where the defendant in the photo was shown in a darker complexion than the rest of the photographs, the totality of circumstances indicated that the photograph array was unconstitutional); *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994) (Court, citing *United States v. Rosa*, 11 F.3d 315, 330 (2.d Cir. 1993), noted that the size of the array, manner of its presentation by the officers, and the details of the photo are all relevant factors to consider in a determination of impermissibility); *United States v. Saunders*, 501 F3d. 384, 390 (4th Cir. 2007)(Court held that where police failed to follow their own internal procedures and where a photo of defendant included in the photo array looked significantly different than the filler photos, the photo array shown to the witness was impermissibly suggestive).

Based on the discovery produced in this case, along with additional information provided by the Government to date, it appears that there are four CSs that the Government may be calling who "identified" Mr. Maximo during investigative photographic "show-ups" that were impermissibly suggestive.

- ○ **CS-20; BATES #s 5332-5333**

The report indicates that a photo of Mr. Maximo was show to the CS in July of 2014, during a debriefing. Initially, the CS was shown a different photo, and responded by reflecting back 4-5 years (which would be 2009 or 2010), during which time he worked with two other individuals in making five GFV drug runs from San Andres Island to Raya, Honduras. Apparently he stated he helped deliver drugs to "ARNULFO LNU" (note: many other reports in this case reference the name "Arnulfo," while clearly referring to someone other than Mr. Maximo).

The report then states that "upon viewing a photograph of ARNULFO ARRECHAVALA, a/k/a ARNULFO FAGOT-MAXIMO," the CS stated this was the ARNULFO to whom he delivered cocaine loads. It is apparently the investigators who had decided that Arnulfo LNU was a reference to Arnulfo Arrechavala; and then again that Arnulfo Arrechavala (which was neither a nickname nor an actual name associated with Mr. Maximo) was a reference to Mr. Maximo. The CS was then reportedly shown a photo of only Mr. Maximo's face (apparently nothing to indicate height), and at this point, it is reported that the CS made the statement indicated above.

With regard to this debriefing, the Government has provided the defense with a copy of the one photo they described relating to Mr. Maximo. The version of the photo the defense

received is extraordinarily grainy and dark. Given these circumstances, this photo show was unduly suggestive.

      o   **CS-36; BATES #s 6504-6507**

The report states that the CS was shown a series of six photos and was only able to identify a photo of "Arnulfo FAGOT MAXIMO a/k/a EL TIO." The Government has stated that a photo book (provided to the defense as Bates #s 13073-13127) containing 55 photos was used in this debriefing. The photo book contains a wide-ranging, eclectic collection of photos. Six of the photos are women, and many have no resemblance to Mr. Maximo at all. While it has not been disclosed to the defense as to which six photos of the 55 in the photo book were shown to this CS, given the date of the debriefing (**May 9, 2018**), it would be presumed that the six photos shown are the six co-defendants in this case.

The grouping of photos is highly suggestive in that Mr. Maximo does not look like any of the co-defendants, one of whom is a woman. Further, May of 2018 is more than 2 ½ years after the Indictment in this case, and almost a year from the time the only two co-defendants that are here were extradited. It is highly likely that the CS knew, either himself or through his attorney, that he was being asked to identify Mr. Maximo's co-defendant and Mr. Maximo, the only two co-defendants who had/have a pending trial. His co-defendant is alleged to be the leader of the alleged DTO, and responsible for a significant number of murders. Given these circumstances, this photo show was unduly suggestive.

      o   **CS-37; Bates #s 6712-6720**

The report indicates that TFO Kelly had the photographs numbered and only showed [redaction] specific photographs. (the report, dated **May 8, 2018**, also indicates that a non-

numbered photo of two people together – from the Valle Valle family was shown to the CS outside of the described photo show).   As with CS-36 above, the Government has stated that a photo book (provided to the defense as Bates #s 13073-13127) containing 55 photos was used in this debriefing, which also took place in May of 2018.  In this report, assuming that the numbers of the photographs indicated in the report match the numbers indicated in the disclosed photo book, this CS was shown only five photos, all of which are co-defendants in this case, and one of whom is a woman.

Again, Mr. Maximo does not look like any of the co-defendants, and May of 2018 is more than 2 ½ years after the Indictment in this case, and almost a year from the time the only two co-defendants that are here were extradited.  It is highly likely that the CS knew, either himself or through his attorney, that he was being asked to identify Mr. Maximo's co-defendant and Mr. Maximo, the only two co-defendants who had/have a pending trial.  Given these circumstances, this photo show was unduly suggestive.


- ○ **CS-38; BATES #s 6732-6738**

The report, dated **May 9, 2018**, indicates that "TFO Kelly had the photographs numbered and only showed [redaction] specific photographs."  As with CS-36 and CS-37 above, the Government has stated that a photo book (provided to the defense as Bates #s 13073-13127) containing 55 photos was used in this debriefing, which also took place in May of 2018.  In this report, assuming that the numbers of the photographs indicated in the report match the numbers indicated in the disclosed photo book, this CS was shown only seven photos, six of whom are co-defendants in this case, one of whom is a woman and one of whom is an unknown individual to the defense.

Again, Mr. Maximo does not look like any of the co-defendants, ot the unknown individual. May of 2018 is more than 2 ½ years after the Indictment in this case, and almost a year from the time the only two co-defendants that are here were extradited. It is highly likely that the CS knew, either himself or through his attorney, that he was being asked to identify Mr. Maximo's co-defendant and Mr. Maximo, the only two co-defendants who had/have a pending trial. Given these circumstances, this photo show was unduly suggestive.

WHEREFORE, for the reasons stated herein, and for such other reasons as may appear to the Court, the defendant asks the Court to grant this Motion and suppress the presentation of any in=court identification of Mr. Maximo by the CSs hereinabove described..

Respectfully submitted,

ARNULFO FAGOT-MAXIMO
By Counsel

_____/s/_____
Mark Petrovich; #36255
Thomas Walsh; #36363
Counsel for the Defendant
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: (703) 934-9191
Fax: (703) 934-1004
Email: mp@pw-lawfirm.com
        tw@pw-lawfirm.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on or before the 19th day of October, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas W. Traxler, Esquire
James L. Trump, Esquire
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
phone: 703 299-3746
fax:    703 299-3980
usavae.alx.free@usdoj.gov


_____/s/_____
Mark Petrovich
Virginia Bar No. 36255
Counsel for the Defendant
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia  22030
Phone:  (703) 934-9191
Fax:  (703) 934-1004
Email:  mp@pw-lawfirm.com