IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) ) | Criminal No. 1:15-CR-290 |
| NOE MONTES-BOBADILLA, et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANT'S THIRD MOTION, WITH MEMORANDUM, FOR THE PRODUCTION OF SPECIFIC EXCULPATORY INFORMATION; THE PRODUCTION OF WITNESSES; OR IN THE ALTERNATIVE, FOR A SEVERANCE AND CONTINUANCE**

COMES NOW the defendant, Arnulfo Fagot-Maximo (hereinafter "Maximo"), by counsel, and moves this Court, on November 9th, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, to order the government to produce and furnish to the defendant the specific exculpatory information set forth below as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Agurs*, 427 U.S. 97 (1976).

In Brady, the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id., at 87. See Giglio v. United States, 405 U.S. 150 (1974); United States v. McCrane, 527 F.2d 906 (3d Cir. 1975), aff'd after remand, 547 F.2d 205 (1976). The Supreme Court has also emphasized that impeachment evidence, as well as exculpatory evidence, falls within the Brady rule. United States v. Bagley, 473 U.S. 669, 678 (1985). Such evidence, if disclosed and used effectively,

1

may make the difference between conviction and acquittal. See Napue v. Illinois, 360 U.S. 264 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."). In acknowledging that the prosecution has a duty to disclose any favorable evidence that could be used at trial, it is frequently overlooked that the prosecution also has a duty to disclose any favorable evidence that could be used "in obtaining further evidence." Giles v. Maryland, 386 U.S. 66, 74 (1967). Additionally, favorable evidence need not be competent evidence or evidence admissible at trial. United States v. Gleason, 265 F. Supp. 880, 886 (S.D.N.Y. 1967); Sellers v. Estelle, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981)(evidence suppressed was material to the preparation of petitioner's defense, regardless whether it was intended to be admitted into evidence).

     The Supreme Court has never precisely pinpointed the time at which the disclosure under Brady must be made. It is abundantly clear, however, that disclosure by the government must be made at such a time as to allow the defense to use favorable material effectively in the preparation and presentation of its case, even if satisfaction of these criteria requires pre-trial disclosure. United States v. Pollock, 534 F.2d 964, 974 (D.C. 1976). Accord United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988); see United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984)(Noting that Brady information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case.); see, e.g., United States v. Recognition Equipment, Inc., 711 F. Supp. 1, 14 (D.D.C. 1989)(Ordering immediate disclosure of evidence regarding criminal records and other impeachment information for government witnesses, statements to the effect that any of the defendants were not members of

the charged conspiracy, and evidence supporting the defendants' defenses). Manifestly a more lenient disclosure burden on the government would drain Brady of all vitality. Unites States v. Elmore, 423 F. 2d 775, 779 (5th Cir. 1970).

The disclosures requested herein should be made immediately so that appropriate defense preparation can be made. To make effective use of the information requested herein, it is essential to test the reliability of this information through thoughtful consideration and thorough investigation. This cannot be accomplished if disclosure is delayed.

Finally, in this motion, the defendant seeks from the Court an order that goes beyond disclosure of only *known* exculpatory evidence. The defendant asks the Court to order the government to make a specific, affirmative effort to *discover* any and all exculpatory evidence which exists and is known already to any government agent or agency or government witness (in any jurisdiction, in the United States, or in any foreign country with whom the Government has cooperated in the prosecution of this case). See *Strickler v. Greene*, 527 U.S. 263 (1999)(In order to comply with *Brady v. Maryland* the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf, including law enforcement).

For the purposes of this motion, "information" includes all matters known to any agents of the government and all matters which can be learned by the government's attorneys in the exercise of due diligence, including information possessed and maintained in all federal law enforcement and/or investigative agencies. The information requested hereinbelow refers to all information, whether or not it constitutes competent or otherwise admissible evidence, whether or not it is provided by a confidential source, and whether or not the information is deemed to be classified in nature. Mr. Maximo thus requests the following discovery material.

## INFORMATION RELATING TO THE IDENTIFICATION
## OF MATERIAL WITNESSES

Counsel for Mr. Maximo is aware that this very issue was litigated at the previous motion heard by this Court on October 11, 2018. At that time, counsel informed the Court that there are a number of CS's that counsel will be potentially seeking to call as witnesses on behalf of Mr. Maximo. Counsel also informed the Court that consistent with such point, counsel had been made aware of at least 15 CS's that the Government is not intending to call (upon reading the reports related to those CSs, it seems to be based on the fact they are not helpful to the Government's case and could be beneficial to Mr. Maximo's case).

During the October 11, 2018, motions hearing, in reference to the CSs that counsel was referring to, the Court asked counsel "[h]ave you identified them to Mr. Traxler and said, we want to call this witness, please have him produced if he is in Government custody. If he is not, then please give me his information and - - because the way you're bringing it to my attention today . . . there's no finiteness to your request." After explaining that the government does not generally have to identify confidential sources that they are not going to call as witnesses, and the potential limitations of confidentialities, the Court then stated "[i]f you say, I want to call confidential source three in my case, please identify them, identify him so that I can subpoena him, that's something that I will certainly look at. But I am not going to look at it at this stage where you are." A short while later, concerning the same issue of identification of CSs, the Court stated "[w]ell, then make the request of Mr. Traxler for those that you believe are going to provide evidence in support of whatever defense your client is presenting, and I will look at

4

that." Finally, at the end of the hearing, the Court stated "I am going to deny the motions at this time without prejudice to allow Mr. Petrovich to further examine witnesses he believes he wants to call in his - - or may call in his case, and supporting reasons for doing that."

After the motions hearing, counsel for Mr. Maximo set out again to narrow the scope of its request and provide more specific information with regard to potential witnesses. After another review of numerous relevant documents, on October 19, 2018 counsel emailed a request to the government which among other things, requested that (14) specifically identified CSs "be made available as potential witnesses." After several emails were exchanged which clarified that counsel sought only to have the (14) CSs made available as witnesses at trial and did not seek their actual identities at this time due to the repeated government claims of safety, the government reiterated its position of citing *Roviaro, et al.*, and not having to grant counsel's request without more specific information as to why each of the CSs is relevant and helpful to Mr. Maximo's case. In response to that email, counsel then spent substantial time producing specific information concerning each of the CSs referred to herein, including the reports attributed to each CS, and the general reasons each CS is relevant and helpful to Mr. Maximo's case (see attached). That renewed request and information was then sent to the government on the afternoon of October 24th. That same afternoon, the government refused counsel's request with regard to EVERY ONE of the (14) CSs listed.

In its response to counsel, the government summarily states that they do not believe that we have demonstrated that these sources have information that is relevant and helpful to our client. The government reasons that, "you contend that your client's name did not come up during interviews with them. That fact alone is not helpful to your client, for the reasons we have previously explained." A review of the attached document reveals much more specific

5

information and depth. For example, CS-12 stated that Maradiaga (a named CD who the government is expected to call as a witness) "was in charge of the landing strips in Honduras." This contradicts directly other CSs that state that Mr. Maximo controlled air shipments into Honduras and/or Mosquitia, including Maradiaga himself. Other CSs on counsel's list provide detailed information pertaining to air shipments of drugs into Honduras and associated with the alleged Montes DTO. They are supportive of Mr. Maximo's defense for similar reasons to CS-12. Also, it is important to point out that another witness the government plans on calling, Arnulfo Valle Valle, has stated that Noe Montes-Bobadilla and Mr. Maximo were "equals" with regard to Montes DTO activities, and that they were "partners." A number of the suggested CSs clearly call into question that assertion, as well as Arnulfo Valle Valle's credibility. Still other CS's and potential witnesses for the government say that Mr. Maximo was actually the leader of the Arrechevala DTO in Mosquitia. A number of the CSs on counsel's list would call into question those assertions, and the CS's that attempt to aver that.

The government has not, and likely will not state in advance which witnesses they will call. Thus, defense counsel needs to be able to react to whatever witnesses the government calls to testify at trial. Thus, defense counsel requests this court to order the government to provide the exculpatory evidence of the identities of the CSs listed herein. In the alternative, counsel asks this Court to order the government to make the CSs available to counsel at trial.

### IN THE ALTERNATIVE, MR. MAXIMO SEEKS A SEVERANCE AND CONTINUANCE

If for any reason the government is not required to provide the exculpatory information and/or relief requested above, Mr. Maximo hereby moves for a severance from the trial of his co-

defendant, and a continuance of his trial date.

Based on the information provided to counsel for Mr. Maximo to date, it appears that the government's objection to providing the exculpatory information requested herein is the safety of the CSs, should they testify. Logically, that would be based on fear of actions they feel would be taken by Noe Montes-Bobadilla (hereinafter "Montes"). This is so because if those CSs are called as witnesses by Mr. Maximo, in an effort to help his case, there would be no reason for him to seek any kind of revenge against them. Thus, if the trials of Mr. Maximo and Montes are severed, the CSs listed above would not need to provide any testimony against Montes, as they would if the trials remain joined. Counsel for Mr. Maximo has previously moved this court for a severance of his trial from that of Montes (see motion filed on June 26, 2018 and heard on July 27, 2018). Counsel hereby incorporates the argument previously set forth in further support of a severance under these circumstances.

Given a severance, counsel would request a continuance of Mr. Maximo's case to ensure ample opportunity to procure the witnesses sought by counsel hereinabove.

WHEREFORE, for the reasons stated herein, and for such other reasons as may appear to the Court, the defendant asks the Court to grant this Motion and compel the government to provide the exculpatory information requested above.

                                              Respectfully submitted,

                                              ARNULFO FAGOT-MAXIMO
                                              By Counsel

_____/s/_____
Mark Petrovich; #36255
Thomas Walsh; #36363
Counsel for the Defendant
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: (703) 934-9191
Fax: (703) 934-1004
Email: mp@pw-lawfirm.com
 tw@pw-lawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on or before the 26th day of October, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas W. Traxler, Esquire
James L. Trump, Esquire
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
phone: 703 299-3746
fax: 703 299-3980
usavae.alx.free@usdoj.gov

_____/s/_____
Mark Petrovich
Virginia Bar No. 36255
Counsel for the Defendant
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: (703) 934-9191
Fax: (703) 934-1004
Email: mp@pw-lawfirm.com