IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>ARNULFO FAGOT-MAXIMO, )<br>)<br>*Defendant*. )<br>) | Case No. 1:15-cr-290<br>Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion to Set Aside the Verdict and Grant a New Trial. Dkt. No. 256. The Motion is fully briefed and the Court heard oral argument on May 9, 2019. For the following reasons, the reasons stated from the bench, and good cause shown the Motion is denied.

### I. Background

In October 2015, Defendant, Arnulfo Fagot-Maximo, and five co-conspirators were charged in a single count indictment with conspiring to distribute cocaine for importation into the United States. All co-conspirators charged in the indictment were members and associates of the Montes-Bobadilla drug-trafficking organization (Montes DTO).

During a five-day trial, lasting from November 27 to November 30, 2018, nine cooperating witnesses testified to Defendant's role in the conspiracy. Two of these witnesses were Luis Valle and Miguel Valle. The witnesses described how Defendant and his organization received shipments of cocaine, which each could total hundreds or thousands of kilograms, directly from Colombian suppliers. The shipments arrived at Defendant's property in La Mosquitia, a remote region in northeastern Honduras. The evidence presented at trial also

1

showed how Defendant worked with the Montes DTO and others to transport the cocaine through Honduras so it could reach its ultimate destination, the United States. After deliberating the jury found Defendant guilty of conspiring to distribute five kilograms or more of cocaine, knowing or intending that the cocaine would be imported to the United States.

Defendant bases his present Motion on three main arguments – that the Court erred in its pretrial rulings, that posttrial disclosures by the Government amount to *Brady* violations, and that the Court erred in declining to provide a copy of the indictment to the jury to use in its deliberations.

Prior to trial, Defendant moved three times to compel the government to disclose the identities of cooperating sources. Dkt. Nos. 60, 122, 147. The Court denied the first two motions because Defendant was not specific enough in his requests for information. In his third motion, Defendant narrowed his request to asking the government to reveal the identities of, or make available to testify, fourteen cooperating sources.

At a hearing on the third motion, the Court ordered Defendant to furnish the investigative reports that defense counsel claimed contained exculpatory information and ordered the government to submit an *ex parte* submission with identifying information about the sources. After reviewing these submissions, the Court determined the reports did not contain exculpatory information and the disclosure of the confidential sources' identities would put both them and their families at risk for their lives. For these reasons, the Court denied the motion.

After trial, on January 31, 2019, the government filed a notice with the Court informing the Court that it had recently discovered a letter written May 6, 2015 that was relevant to the case and had produced the letter to Defendant. The letter was written by a prosecutor who had formerly worked on the case, but who had since left the office. In the letter, the prosecutor wrote

to inform officials at the Alexandria Detention Center that Miguel Valle and Luis Valle were abusing their telephone privileges. The letter explained,

> Specifically, after reviewing draft summary translations of a portion of their Spanish-language jail calls for the period of December 18, 2014 to April 6, 2015, recordings of which we obtained pursuant to subpoena, we are concerned that these two defendants appear to be using jail phones to: (1) communicate threats; (2) conduct drug-trafficking and trafficking-related business, including selling and moving drugs and collecting debts; (3) circumvent jail phone protocols by conducting three-way calls and by contacting associates overseas by dialing U.S. telephone numbers that somehow route directly to persons located overseas; and (4) circumvent jail phone protocols by using another prisoner's pin code to make calls.

Dkt. No. 264, Ex. O.

On the same day the government filed its notice with the Court regarding the recently discovered letter it also emailed defense counsel a copy of an agent's rough notes from an interview with Miguel Valle. The government had previously produced to Defendant the final DEA-6 of the interview, but not the rough notes. The government produced these rough notes because of a discrepancy between their contents and Miguel Valle's testimony at trial. In his testimony at trial, Miguel Valle described how Defendant had introduced Miguel Valle to El Cinco, a Colombian drug trafficker. However, the rough notes of Miguel Valle's interview stated "El Cinco introduced [Defendant] to [Miguel Valle]." The government informed defense counsel that after conferring with the agents involved in the interview it was unclear whether this was a mistranscription of what Miguel Valle said or a misstatement by Miguel Valle.

Defendant argues in his Motion a new trial is warranted because the Court erred in not disclosing information about the cooperating sources, because the government's posttrial disclosures regarding the Valles constitute *Brady* violations, and because the Court erred in not providing the jury with a copy of the indictment.

## II. Analysis

In *Brady v. Maryland*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). When seeking a new trial based on a *Brady* violation, the defendant must establish "that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, i.e., 'prejudice must have ensued'; and (3) that the prosecution had materials and failed to disclose them. *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010) (quoting *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001).

Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Savage*, 885 F.3d 212, 221 (4th Cir. 2018) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Essential to this inquiry is "whether the favorable evidence withheld from the defendant reasonably could be considered as placing the entire case in such a different light that confidence in the verdict is undermined." *Richardson v. Branker*, 668 F.3d 128, 145 (4th Cir. 2012).

*A. Defendant has not demonstrated the nontestifying sources possessed exculpatory information or that the nontestifying sources provided information that contradicted the government's witnesses.*

A *Brady* claim must be supported by something more than mere speculation. *See United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019). This is because if the defendant "can only speculate as to what the requested information might reveal, he cannot satisfy *Brady's* requirement of showing that the requested evidence would be 'favorable to [the] accused.'" *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (quoting *Brady*, 373 U.S. at 87).

4

The mere absence of inculpatory information is not exculpatory. *United States v. Borda*, 941 F. Supp. 2d 16, 24 (D.D.C. 2013) ("[T]he absence of incriminating information . . . cannot be turned into an affirmative conclusion that it is 'favorable' to the Defendants and, therefore, cannot constitute Brady material."). The fact that investigation reports do not mention a defendant by name "does not, standing alone, necessitate disclosure under *Brady*." *Harrison v. United States*, 2012 WL 3000146, at *5 (N.D. Fla. June 26, 2012), *report and recommendation adopted*, 2012 WL 2999912 (N.D. Fla. July 23, 2012).

First, Defendant argues the confidential sources he requested identifications for possessed exculpatory information because they did not name Defendant during interviews involving the Montes DTO. Defendant contends because the government alleged he was a close associate of the Montes DTO the fact that he was not mentioned in these interviews was exculpatory, as any close associate would have been mentioned in discussions of the operations of the Montes DTO.

However, the mere fact that the confidential sources did not mention Defendant in their interviews does not raise Defendant's argument that they possess exculpatory information above mere speculation. There are many nonexculpatory reasons that Defendant would not have been mentioned in these interviews. For example, the confidential sources may not have been asked about Defendant or the confidential sources may not have been in a position in the conspiracy to know about Defendant's involvement. Here because Defendant's *Brady* claim is supported by mere speculation he has not demonstrated that the confidential sources possessed information that was favorable to him. Therefore, this does not constitute a *Brady* violation.

Second, Defendant argues the confidential sources posessed information that would have contradicted the testimony of the government's witnesses. In support, Defendant points to interview reports in which four cooperating sources detailed maritime and air shipments of

5

cocaine received by the Montes DTO in La Mosquitia but made no mention of Defendant. Defendant contends this contradicts the Valles' testimony at trial.

This does not contradict the Valles' testimony at trial. The Valles did not testify that Defendant was involved in every air and maritime cocaine shipment conducted by the Montes DTO. In fact, the evidence at trial demonstrated that the Montes DTO sometimes used other traffickers in La Mosquitia besides Defendant. Therefore, the information in these interview reports is not contradictory to the testimony given at trial and is not exculpatory.

*B. The government's posttrial disclosures did not violate the government's discovery obligations.*

Defendant next argues that two posttrial disclosures made by the government: a letter from a former prosecutor to the Alexandria Detention Center and the rough notes from an interview with Miguel Valle, constitute *Brady* violations.

<u>i. Letter to the Alexandria Detention Center</u>

If evidence is available to the defendant there can be no *Brady* violation because the evidence was not suppressed. *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002). Further, when "the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990); *see also United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 316 (4th Cir. 2000) ("[T]he *Brady* rule does not apply if the evidence in question is available to the defendant from other sources, either directly or via investigation by a reasonable defendant.").

Here, Defendant argues the government's late disclosure of a letter describing the Valles' use of jail phones to further their criminal activities while incarcerated amounts to a *Brady* violation. However, a month before trial, the government disclosed the jail calls themselves to

6

Defendant and presented an opportunity for defense counsel to come listen to the calls or offered to make copies of the recordings of the calls for defense counsel. Although the letter was not disclosed to Defendant until after trial, the calls that the letter describes were available to Defendant before trial. Because the evidence was available to Defendant he "is not entitled to the benefit of the *Brady* doctrine." *Wilson*, 901 F.2d at 381.

Further, even assuming the letter could properly be considered suppressed evidence, the letter did not contain favorable information for Defendant. As detailed in the confidential sources discussion above, the mere fact that the Valles did not mention Defendant in their calls from jail is not exculpatory. Further the misconduct in the calls – drug trafficking, communication of threats, and abuse of jail telephone privileges – are not probative of truthfulness and thus would be inadmissible under Federal Rule of Evidence 608(b). Finally, the misconduct could not be used as evidence of bias as they occurred before the Valles entered into plea agreements and thus the Valles could not have a reasonable fear of further prosecution based on the allegations in the letter.

Moreover, the information in the letter was not material. At trial the Valles were impeached with specific acts of bribery and corruption, participation in murders, extensive drug trafficking, prior inconsistent statements, and the potential for bias arising from their hope for a sentence reduction. In light of this extensive impeachment material, the content of the jail calls was not something that would place the entire case in such a different light that confidence in the verdict would be undermined. For these reasons, the nondisclosure of the letter to the Alexandria Detention Center was not a *Brady* violation.

### ii. Rough notes of Miguel Valle interview

\n\n

Defendant next argues a new trial is warranted because of a posttrial disclosure by the government that revealed a discrepancy between Miguel Valle's testimony at trial and the rough notes of his May 8, 2018 interview.

At trial, Miguel Valle testified that he met Defendant in person for the first time in a hospital parking lot in San Pedro Sula. With Defendant was El Cinco, a Colombian drug trafficker who Defendant introduced to Miguel Valle. After the introductions, Miguel Valle, Defendant, and El Cinco moved to a cafeteria where they planned a shipment of cocaine. This testimony is consistent with what Miguel Valle told law enforcement in a 2016 interview. However, the rough notes of an interview with Miguel Valle that took place on May 8, 2018 interview state "El Cinco introduced [Defendant] to Miguel Valle." After discovering this apparent inconsistency following Miguel Valle's testimony at trial, the government disclosed the rough notes to Defendant. The government informed Defendant that the agent conducting the interview said he was unsure if the notes reflected a mistranscription on the agent's part or a misstatement by Miguel Valle.

This minor inconsistency between Miguel Valle's testimony and the rough notes does not rise to a *Brady* violation. Whether Defendant introduced Miguel Valle to El Cinco or whether El Cinco introduced Defendant to Miguel Valle is immaterial. What is important is that the three men went on to plan an illegal cocaine shipment.

Further, as discussed above, Miguel Valle was impeached during cross-examination with other inconsistent statements as well as other serious crimes and misconduct. In light of the significant impeachment material employed against Miguel Valle at trial this particular inconsistent statement is not one that was likely to put the verdict in doubt and therefore is not a *Brady* violation.

*C. Declining to provide the jury with a copy of the indictment during its deliberations does not warrant a new trial.*

"The submission of an indictment to the jury is a discretionary matter with the district court." *United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986). If an indictment is submitted to the jury, typically irrelevant allegations in the indictment should be redacted. *Id.*

Defendant argues the Court erred by not providing the jury with a copy of the indictment to consider during their deliberations. Defendant asserts that because the jury instructions mention the indictment and because the instructions explain how the jury should consider conduct charged and not charged in the indictment, not allowing the jury to view the indictment made the instructions confusing and incomplete.

The Court did not provide the jurors with a copy of the indictment because the indictment was replete with irrelevant and unproven allegations relating to co-defendants that were not on trial. As a result, presenting the indictment to the jury created a risk of confusing or prejudicing the jury against Defendant. Because the Court did not provide the indictment to the jury it included the operative charging language from the indictment in its instructions to the jury and provided the jury with copies of those instructions to use during its deliberations.

### IV. Conclusion

For the above reasons, Defendant's Motion to Set Aside the Verdict and Grant a New Trial, Dkt. No. 256, is denied. A separate Order shall issue.

May 23, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge