**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA**

ARNULFO FAGOT-MAXIMO,

     Petitioner,



vs.                       Docket No.: 1:15CR290

UNITED STATES OF AMERICA

     Respondent.

_____/

## PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

Comes now Arnulfo Fagot-Maximo ("Fagot-Maximo") with this his Memorandum of Law

and Supporting Appendix in Support of Motion to Correct and/or Set Aside Conviction and/or

Sentence pursuant to Title 28 U.S.C. § 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

On October 8, 2015, a grand jury in the Eastern District of Virginia returned an indictment

charging six members and associates of the Montes DTO, including Fagot-Maximo, with

conspiring to distribute cocaine for importation into the United States, in violation of Title 21

U.S.C. § 959(a) and 963. (DE:1). The indictment described Fagot-Maximo as an associate who

received cocaine for the Montes DTO in the Department of Gracias a Dios. (DE:1 at 4-7). The

indictment also charged Noe Montes-Bobadilla, the leader of the Montes DTO, for his

participation in the conspiracy. (DE:1). Both Fagot-Maximo and Montes-Bobadilla were

captured in 2017 and extradited to the United States, stopping in Guantanamo Base, in Cuba for

refueling and proceeding to Washington, D.C.[1]  On November 27, 2018, the trial began which

resulted in a return of a verdict of guilt against Fagot-Maximo.  On May 9, 2019, Fagot-Maximo

was sentenced to 396 months followed by five years supervisory release and a $100.00 special

assessment.  (DE: 282).  Fagot-Maximo proceeded on appeal, however, on February 26, 2020,

the Fourth Circuit affirmed the sentence and conviction.  *See United States v. Fagot-Maximo*,

795 F. App'x 213 (4th Cir. 2020).  No *writ of certiorari* was sought.  Based upon restrictions

caused by COVID-19, the United States Supreme Court extended its 90-day filing deadline of all

Writ of Certiorari to 150 days. See, *Order, No. 589*, 2020 U.S. LEXIS 1643 at * 1 (Mar. 19,

2020) (IT IS ORDERED that the deadline to file any petition for a writ of certiorari due on or

after the date of this order is extended to 150 days from the date of the lower court judgment,

order denying discretionary review, or order denying a timely petition for rehearing. See Rules

13.1 and 13.3.)  As such, Fagot-Maximo's Title 28 U.S.C. §2255 is timely filed.

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28

U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104

S.Ct. 2052 (1984).

## STATEMENT AS TO WAIVER, CAUSE, AND PREJUDICE

Fagot-Maximo did not raise Claim Number One on direct appeal because the facts outlined

in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not

part of the record for direct appeal.  "Cause" is therefore established for his failure to raise the

claim before this motion. *Ciak v. United States*,  59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v.*

---

[1] Montes-Bobadilla pleaded guilty and was sentenced to 37 years of imprisonment. *See*
Judgment, *United States v. Noe Montes-Bobadilla*, No. 1:15-CR-290 (E.D. Va. Apr. 5, 2019)
(DE:257).

*United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when the claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994) (holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Fagot-Maximo to raise the claims before this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Fagot-Maximo to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway,* 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall,* 17 F.3d 245, 246 [4] (8th Cir. 1994). Fagot-Maximo has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Fagot-Maximo, within the meaning of *United States v. Frady*, 456 U.S. 152, (1982) is established by the fact that absent relief by this Court, Fagot-Maximo sentence violates the Constitution and laws of the United States. *Id. See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

3

Based on the foregoing, and the absence of any knowing and intelligent waiver by Fagot-Maximo of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## STATEMENT OF THE FACTS

According to the government, Fagot-Maximo played an important role in a conspiracy that involved transporting thousands of kilograms of cocaine along the Central American route. Fagot-Maximo is from the Department of Gracias a Dios,[2] Honduras, a remote region commonly known as "La Mosquitia." (DE:225 p. 32). La Mosquitia is situated on the northeastern corner of Honduras, bordering Nicaragua and the Caribbean Sea. *Id.* It is the closest point in Honduras to Colombia. *Id.* 33-34. The region's location, remoteness, and weak law enforcement presence make it the most popular area of Honduras for receiving shipments of cocaine from Colombia. *Id.* 30-34.

In La Mosquitia, Fagot-Maximo owned a beachfront property near the town of Raya, close to the Nicaraguan border. *Id.* at 78, 83, 87-90, 143, 152-153, 208-213, 242, 348, 498. There, Fagot-Maximo received shipments of cocaine sent by Colombian suppliers via small speedboats known as "go-fast boats," clandestine aircraft, and submarines. Individual shipments carried hundreds, and sometimes thousands, of kilograms of cocaine. (DE:81, DE:226, p. 54, 61-63, 123, 169-176, DE:227, p. 91-92, 137-145). Sometimes Fagot-Maximo owned the cocaine loads that he received; at other times, he received cocaine shipments for other traffickers in exchange for a fee (e.g., 10% of the product). (DE:226, p. 144-145, DE:228 p. 41) After receiving the cocaine in La Mosquitia, Fagot-Maximo then worked with other drug-trafficking organizations to move the cocaine into the interior of Honduras, toward Guatemala. He often worked with the Montes DTO

---

[2] This is similar to a State in the United States. (DE:225 p. 32)

4

and its leader, Noe Montes-Bobadilla (also known as "Ton" or "Tom" Montes), to move the cocaine to its base of operations in the town of Francia, located in the neighboring Department of Colón. (DE:226, p. 64-65, 105-106, 159, 225-229; DE:227 p. 132, 144; DE: 228, p. 41.) Once the cocaine arrived in Francia, Fagot-Maximo and the Montes DTO worked with other drug-trafficking organizations, such as the Valle drug-trafficking organization (Valle DTO), to transport the cocaine to Guatemala. (DE:226, p.225-226; DE:227, p. 61-66, 76-78, 135-144; DE:228, p. 41). Drug traffickers in Guatemala transported the cocaine to the Mexican cartels, which smuggled it into the United States. (DE:226, p.161-163; DE:227, p. 67-68, 140-141, p.146).

Two witnesses estimated that they trafficked around 10,000 kilograms of cocaine with Fagot-Maximo. (DE:226, p.144, DE:227, p. 95). Other witnesses provided testimony reflecting that they trafficked comparable amounts with him, if not more. DE:225, p. 79, 82, DE:226, p. 16, 65-67; DE:227, p. 47, 140-141). In exchange, Defendant was paid in millions of U.S. dollars, part of which he used to pay his Colombian suppliers. (DE:225, p. 92, DE:226, p. 66, 166, 79-88, DE:228, 20-21, 25.)

## ARGUMENT

## I. THE CONVICTION OF FAGOT-MAXIMO IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### A) The Performance of Counsel for Fagot-Maximo Fell Below an Objective Standard of Reasonableness

#### 1. Standard of Review – Ineffectiveness Prong

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). The Court stated that "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The Court clarified that this reference to "highly deferential scrutiny"[3] referred only to the first or performance prong of the test and meant that "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id. Strickland* at 689-691

The Court added that "... strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable

---

[3] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

professional judgments support the limitations on investigation. In other words, counsel has to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.* Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[4] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also Taylor,* at 1495, 1512-16. The Supreme Court noted that "a single, serious error may support a claim of ineffective assistance of counsel." *Id. Morrison*, 477 U.S. at 384. The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough" and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[5] The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy." *Id.,* 477 U.S. 384-386; *Taylor*, at 1495, 1512-16. The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland's*

---

[4] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

[5] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same).

objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 385. The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Morrison*, at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after a thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. Id.* at 385-387; *Williams* at 1512-16. In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[6] if counsel's specific acts or omissions are not demonstrably[7] the result of actual strategic choices made between or among all plausible options

---

[6] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

[7] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989) (record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer") (*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991) (counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley*, 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was "rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a

"after a thorough investigation of law and facts relevant to all possible options." *Strickland,* at

691; *Morrison,* 385-387; *Williams,* at 1512-16.[8]  Where a convicted defendant is claiming

ineffective assistance of counsel, the defendant "must identify the acts or omissions of counsel

that are alleged not to have been the result of reasonable professional judgment." *Id. Strickland,*

at 690.  If the record does not "conclusively" demonstrate "strategic reasons" for counsel's

failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary

hearing.  *A subsequent affidavit from counsel will not suffice to establish a trial strategy,*[9] *nor*

*absolve the district court from the requirement of holding an evidentiary hearing.*[10]

---

"strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[8] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra,* 878 F.2d at 711 (citing *Strickland,* 466 U.S. at 690-91); *Holsomback v. White,* 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996).

[9] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs,* 939 F2d 222, 228 (5ath Cir. 1991); *United States v. Estrada,* 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax,* 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[10] *See Smith v. McCormick,* 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino,* 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States,* 585 F.2d 361, 365 (8th Cir. 1978).

In the instant case, Fagot-Maximo has made specific factual allegations that this Court

should accept as true for considering whether to hold an evidentiary hearing because they are not

conclusively disproved by the files and records of this case.

### 2. Standard of Review – Prejudice Prong

In writing for the majority in *Strickland*, Justice O'Connor stated the general rule that actual

ineffectiveness claims alleging a deficiency in attorney performance are subject to a general

requirement that the defendant affirmatively proves prejudice." *Id.* at 693.  More specifically,

Justice O'Connor set forth the now well-known statement of the test for "prejudice" in claims of

actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 695.

While the Court noted the government's, perhaps natural, inclination to argue that attorney

error is harmless unless the defendant can show that "counsel's deficient conduct more likely

than not altered the outcome of the case"[11] the Court specifically and explicitly rejected this

argument by the government.  In rejecting any outcome-determinative test such as that employed

in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair,
> even if the errors of counsel cannot be shown by a preponderance of the evidence to have
> determined the outcome.

*Id.* at 694; *Williams*, at 1519.[12]

---

[11]This, of course, means that the 'plain error" standard also does not apply to ineffective
assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain
error "must be real and such that it probably influenced the verdict.")

[12] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United
States v. Loghery*, 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have

The Court further specifically rejected the application of the "actual prejudice" standard of

*United States v. Frady*, 456 U.S. 152 (1982), to claims of ineffective assistance of counsel, with

the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral
> proceedings as they do on direct appeal or in motions for a new trial. As indicated by the
> 'cause and prejudice' test for overcoming procedural waivers of claims of error, the
> presumption that a criminal judgment is final is at its strongest in collateral attacks on that
> judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct.
> 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that
> govern decision of such claims makes clear, is an attack on the fundamental fairness of the
> proceedings whose result is challenged. Since fundamental fairness is the central concern of
> the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to
> ineffectiveness claims made in habeas proceedings."

*Id. Strickland*, at 697-98.[13]

The Court hearing an ineffectiveness claim should consider the totality of the factors which

guided the decision-maker in the challenged proceeding, then try to determine which factors

were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors
> on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has

---

held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993)
modified *Strickland* "to require a separate inquiry into fundamental fairness even when
[Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably
affected the outcome of the proceeding", *Williams v. Taylor*, 120 S. Ct, 1495, 1512-16, 146 L.
Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell*, was specifically addressed and
rejected by the Supreme Court in *Williams v. Taylor*. The Supreme Court's holding in *Lockhart
v. Fretwell*, was limited to circumstances where the "different outcome" would be contrary to the
law. *Id*. As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell*:

"... today's decision will, in the vast majority of cases, have no effect on the prejudice
inquiry under *Strickland*. The determinative question - whether there is 'reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding  would
have been different' ... remains  unchanged," *Id*. 506  U.S. at 373 (O'Connor) (concurring).

[13] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable
probability" that the verdict would have been different constitutes "actual prejudice" in claims of
actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th
Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland* at 696.

Where through "hindsight"[14] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland*, at 694-95; *Williams*, at 1512-16; *United States v. Glover*, 121 S.Ct. 696 (2001).[15] This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. See, *Glover* at 696 (rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[16]

---

[14]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson*, 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[15] In *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell*, 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell*, was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor*. The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson*, (10th Cir. 2000) (citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon*, 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[16] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*,

The *Strickland* test for "prejudice" applies to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[17] with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000). Specifically, Fagot-Maximo has made specific, factual allegations, in his § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial and trial phases of his case. Based on the foregoing facts and law, Fagot-Maximo has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland* at 668 and *United States v.*

---

47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States*, 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States*, 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham*, 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995) (same) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono*, 998 U.S. App. LEXIS 7482 (7th Cir. 1997) (unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

[17] *See also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino*, 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990).

*Glover*, 121 S.Ct. 692 (2001); *Williams* at 1512-16; *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also constitutes "cause" allowing the Court to reach the merits of Fagot-Maximo's claim of violation of his rights under the Sixth Amendment.  See, *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United States v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

### 3. Counsel rendered ineffective assistance in violation of Fagot-Maximo's Sixth Amendment Constitutional right for failing to challenge the jury venire.

The Sixth Amendment guarantees a right to a jury selected from a group representing a fair cross-section of the community.  See *Duren v. Missouri*, 439 U.S. 357, 360 (1979); *United States v. Terry*, 60 F.3d 1541, 1544 (11th Cir. 1995) (citing *Taylor v. Louisiana*, 419 U.S. 522, 528-30 (1975)).  "The equal protection clause guarantees the Defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).  Under the three-part test created by the Supreme Court in *Batson*, a Defendant may establish a prima facie case of discrimination by the Prosecutor by showing that: (1) the Defendant is a member of a distinct racial group; (2) the Prosecutor has used the challenges to remove from the venire members of the Defendant's race; and (3) other facts and circumstances surrounding the proceedings raise an inference that the Prosecutor discriminated in his or her selection of the jury pool. *Batson*, 476 U.S. at 96-97; see also *Keel v. French*, 162

14

F.3d 263, 271 (4th Cir. 1998).  In *Powers v. Ohio*, 499 U.S. 400 (1991), the Supreme Court modified Batson to allow Defendants of racist different than the excused juror to have the standing to raise Batson challenges.  See *Powers,* 499 U.S. at 415.  Once a Defendant establishes a prima facie case, the burden shifts to the prosecution to advance a non-discriminatory reason for the exercise of the preemptory challenges.  *Batson*, 476 U.S. at 97.  The trial court will then determine whether the Defendant has proven intentional discrimination.  *Id.* at 96.

During jury selection, in this case, there was only one (1) Hispanic in the jury pool. Fagot-Maximo is Honduran and speaks limited Spanish but a dialect of his native country.  The Government used a preemptory challenge to strike the *only* Hispanic in the complete jury pool. Additionally, the record reflects that Fagot-Maximo's jury was not selected from a group that represented a fair cross-section of the community. As of 2016, Alexandria Washington and Arlington Cities had only 40,642 persons granted lawful permanent residence status of those 7.9% are classified as Latino or Hispanic.  This calculation reflects that there should be an estimated 3,800 persons eligible to serve in the petite juries.  To have only one (1) Hispanic/Latino in a jury pool does not represent a fair cross-section of the community.

Hispanics are a distinctive group in the community. The representation of Hispanics in venires from which his jury was selected is not fair and reasonable in relation to the number of Hispanics in the community.  This under-representation is due to the systematic exclusion of Hispanics in the jury selection process.  As such, trial counsel had a professional obligation to object to the lack of Hispanics in Fagot-Maximo's Trial.  The Sixth Amendment right to a jury selected from a group representing a fair cross-section of the community was violated. See, *Kimmelman*, 477 U.S. at 384 "a single, serious error may support a claim of ineffective

assistance of counsel." By failing to challenge the makeup of the jury pool upon noticing that the only Hispanic in the jury pool was stricken, counsel's performance was deficient.

This error, severely prejudiced Fagot-Maximo because the distinctive group was not represented. Based upon this fact, Fagot-Maximo is entitled to relief and/or an Evidentiary Hearing to allow the parties to brief and address the matter as to why counsel's failure to address the claim before the District Court cannot be considered a Sixth Amendment ineffective assistance of counsel violation.

### 4. Counsel rendered ineffective assistance of counsel by failing to challenge the venue for the 21 U.S.C. § 963 conspiracy offense.

Unlike Section 959, Section 953 does not have a built-in provision. The Fifth Circuit applies to venue provisions to § 963 offenses. Compare *United States v. Zabaneh*, 837 F.2d 1249, 1252, 1255-56 (5th Cir. 1988) (Treating Section 959(c)'s venue provision as applicable when the Defendant is charged with conspiring in violation of Section 963 to violate Section 959 and 952(a)), with *United States v. Mansfield*, 156 F.3d 182 (5th Cir. 1998) (applying § 3238 to a § 963 conspiracy offense).

At the time Fagot-Maximo was charged, Title 21 U.S.C. § 959(c) provided that, "Any person who violates this section shall be tried in the United States District Court *at the point of entry* where such person enters the United States, or in the United States District Court for the District of Columbia." *Id.* This language was eliminated when § 959 was amended in 2017. The venue now rests on Title 18 U.S.C. § 3238, which provides that, "Trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or District, *shall be* in the District in which the offender . . . is first brought." *Id.* The record, in this case, reflects that Fagot-Maximo's indictment was returned by a Grand Jury in October of 2015. The indictment alleged that Fagot-Maximo would be first brought to the Eastern District of Virginia. (DE:1, p. 2).

16

However, Fagot-Maximo was arrested in Honduras and was flown to the United States Naval Base at Guantanamo Bay, Cuba, where the plane refueled. The plane was then flown to Washington, D.C. and Fagot-Maximo was then transported *by car* to Alexandria, Virginia in the Eastern District of Virginia.[18]

Counsel failed to challenge the statutory basis for the venue. If counsel would have challenged the venue, there is a reasonable probability that venue would have been changed to United States District Court for the District of Columbia. As this Court is aware, the District of Columbia has a more Hispanic/Latino per capita than the Eastern District of Virginia. Thus, Fagot-Maximo's jury pool would have been more racially diverse. (See Argument One herein). The Government did not present adequate evidence of venue. There was no adequate evidence that Fagot-Maximo was transported from Honduras to Guantanamo Bay and then to the Eastern District of Virginia. Fagot-Maximo recognizes that neither venue statute – 21 U.S.C. §959(c) nor 18 U.S.C. §3238, requires conduct to occur in the trial district. Both statutes however recognize the venue for crimes that occurred extraterritorially. In this case, the statute was violated because Fagot-Maximo was not tried in the District he was first brought into the United States District Court, *i.e.* the District of Columbia. Fagot-Maximo's point of entry was

---

[18] Fagot-Maximo is not arguing that Guantanamo would be his first point of Entry. See, *United States v. Ramirez-Bravo*, No. 1:16-CR-340-ODE-JKL, 2019 U.S. Dist. LEXIS 224945, at *14 n.7 (N.D. Ga. Aug. 2, 2019) (addressing whether Guantanamo Bay, Cuba (where the defendants' aircraft stopped for refueling before landing in the Eastern District of Texas) qualified as a "point of entry" to a judicial district under § 959, such that venue was proper in Guantanamo Bay rather than in the Eastern District of Texas. *Id.* at 395. The court held that Guantanamo Bay was not a "point of entry" because it is not located within a judicial district, and that the Eastern District of Texas was the point of entry under § 959 because it was the district where the defendants first entered.)

17

Washington, D.C., not Alexandria, Virginia.  This was a clear error that warranted counsel's

objection. Thus, an evidentiary hearing is required to address the matter before this Court.

### 5. Counsel rendered ineffective assistance by failing to object to the government's improper vouching for the testimony of witness Juving A. Suazo Peralta and Ronald J. Carrion Zala after the government inferred that his testimony was truthful during his direct testimony.

The argument in this claim is straightforward.  Juving A. Suazo Peralta ("Peralta")  and

Ronald J. Carrion Zala ("Zavala") were called to testify as government witnesses.  As any typical

cooperators, Peralta and Zavala reviewed his plea agreements and explained what repercussions

they faced if they did not testify "truthfully" during the trial:

Q. When did you plead guilty?

A. January of 2015.

Q. And where was the court that you pled guilty in?

A. Miami, Florida.

Q. And what were you originally sentenced to when you pled guilty?

A. 208 months in prison.

Q. Before you pled guilty, did you sign a plea agreement?

A. Yes, sir.

Q. Does that plea agreement obligate you to cooperate with the Government?

A. Yes, sir.

Q. And what's your understanding of your obligation under the plea agreement?

A. To always be available to provide any information the  Government might need of me, provide any testimony, and share any information that might be useful to the U.S. Government.

**Q. And do you understand that your obligation is to tell the truth?**

**A. Yes, sir, always tell the truth.**

**Q. What would happen if you didn't tell the truth?**

**A. Problems, additional charges.**

**Q. And what are you hoping to get out of cooperating with the Government?**

**A. Well, a reduction in my sentence.**

Q. And who decides if you will get a reduction in your sentence?

A. The judge.

Q. Besides this possibility of a lowered sentence, has anything else been promised you?

A. No, sir.

**Q. Have you had your sentence reduced yet?**

**A. Yes, sir.**

**Q. Is that the result of cooperation in other cases?**

**A. Yes, sir.**

Q. What's your current sentence?

A. 102 months in prison.

(Exhibit A, DE: 227 at 27-30 Peralta's Testimony).

A similar dialogue occurred with government witness Zala during his direct testimony:

Q. Are you currently incarcerated?

A. Yes.

Q. What are you incarcerated for?

A. For conspiracy regarding drugs and the importation of more than 2,000 kilos.

Q. Where were you convicted?

A. Miami, Florida.

Q. What sentence did you receive?

A. 108 months.

Q. Did you plead guilty?

A. Yes.

Q. When you pleaded guilty, did you enter into an agreement with the Government?

A. Yes.

Q. Did that agreement contain cooperation provisions?

A. Yes.

Q. What's your understanding of your obligations under those provisions?

A. That I should cooperate with the United States Government with respect to the experience that I have -- the experiences I have had in my life, and that I should tell the truth as required by the Government.

Q. Are you testifying today pursuant to that cooperation agreement?

A. Yes.

Q. Do you hope to receive a benefit in return?

A. Yes.

Q. What's that benefit?

A. Well, I know that the Government can recommend a reduction in my sentence, but at the end of the day it's the judge who decides.

Q. Have you testified in a criminal case before?

A. Yes.

*Q. Have you been cooperating with the United States Government for a couple years now?*

**A. Yes.**

*Q. Have you previously received a reduction in your sentence?*

*A. Yes.*

**Q. What's your sentence now?**

**A. I was resentenced to 59 months.**

 (Exhibit B, DE:228, p. 7-9, Zavala's Testimony)

Four things can be ascertained by the testimony elicited by the Government: (1) that the witnesses' plea agreement is contingent on providing conditioned only upon you providing full, complete, and truthful cooperation; (2) that the witness is required to "tell the complete truth"; (3) that if the witness does not "tell the complete truth" there could be "problems, additional charges." *Id.* (DE:227, p. 27). In essence, if the witness lies, he will not receive the benefit of a reduced sentence at any stage.

However, a problem arises when the prosecutor elicits from the witness that his sentence has already been reduced (an unnecessary statement), thus since the sentence can only be reduced if the witness testified truthfully. Thus, no truthful testimony, no sentence reduction. By eliciting that the sentence was already reduced, the government is advising the jury that the witness testimony was in fact, truthful. The elicited testimony leads the jury to the conclusion that the witness has provided truthful information and that the information has been corroborated since the witness's sentences were already reduced. The elicited testimony leads the jury to believe that since no repercussions have been suffered by the witness, that the information he has provided has in essence been verified by the government. Fagot-Maximo understands that it is perfectly permissible for a prosecutor to introduce a witness's plea agreement on direct examination, even if it includes a truthfulness provision. *United States v. Magallanez*, 408 F.3d 672, 679-80 (10th Cir.), *cert. denied*, 546 U.S. 955, 126 S. Ct. 468, 163 L. Ed. 2d 356 (2005).

The prosecutor may also, discuss the truthfulness provision and make sure the witness is

aware of the consequences of failing to tell the truth. *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990). This is intended to allow the prosecutor to head off claims that the witness' testimony is suspect due to the plea agreement. "Use of the 'truthfulness' portions of [plea] agreements become impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness's testimony." *Id.* at 1498. Such independent verification can take the form of statements about polygraph tests or detective monitoring. *Id.* In essence, the jury was led to believe that the prosecutor has a way to monitor the witness's testimony for its veracity and they [the Government] knew, the witnesses were being truthful in their testimony, thus their sentences were reduced before their testimony. The jury could reasonably infer that the government would not have "reduced" their sentences if it had not independently verified the truthfulness of the testimony.

As such this Court must agree that the prosecutor's improper questioning and trial counsel's failure to object to these specific statements, warrants an evidentiary hearing and a new trial.

### 6. An Evidentiary Hearing is Necessary and Would be Useful to the Court

Title 28 U.S.C. § 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside, or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show  that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

22

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Fagot-Maximo has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Fagot-Maximo has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well-settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief)*; Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Fagot-Maximo respectfully requests this Honorable Court to ORDER an evidentiary hearing where he can prove his case.

23

## CONCLUSION

WHEREFORE MOVANT Arnulfo Fagot-Maximo respectfully asks this Honorable

Court to (A) ORDER an evidentiary hearing as outlined in his § 2255 motion; and, upon proof of

his allegations herein, ORDER that Fagot-Maximo's conviction be VACATED.

Done this 13th, day of July 2021

I hereby do certify that according to Penalty of
Perjury Title 28 U.S.C. § 1746 that on this _13_ day
of July 2021 I signed and mailed this document via
the Federal Bureau of Prisons Legal Mail System.

Respectfully submitted,

Arnulfo Fagot Maximo
Register Number: 91748-083
FCI Williamsburg
P.O. Box 340
Salters, SC  29590